UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WESTERN HERITAGE INSURANCE
COMPANY,
        Plaintiff,

v.

Case No. 8:13-cv-1116-T-24-TGW

DENNIS MARK MONTANA, et al.,
        Defendants.
_____/

## ORDER

This cause is before the Court on Plaintiff Western Heritage Insurance Company's ("Western Heritage") Motion to Dismiss Count II of Defendant's Counterclaim and to Strike Related Affirmative Defenses. (Dkt. 17.) Defendants Dennis Mark Montana and Rebekah J. Patterson, as assignees of Suncoast Preferred Investment Corporation, filed a response in opposition. (Dkt. 19.)

### I. BACKGROUND

In October 2007, Paul Blevins was assaulted by a patron of a bar owned by Suncoast Preferred Investment Corporation ("the Insured"). (Dkt. 11 ¶¶ 54-56.) The Insured maintained a $1,000,000 commercial general liability policy ("the policy") with Plaintiff Western Heritage Company ("Western Heritage"), a surplus lines insurer. (*Id.* ¶ 64.) Mr. Blevins suffered bodily injuries, went into a medically-induced coma, and had brain surgery. (*Id.* ¶ 60.)

In October 2008, Defendants Dennis Mark Montana and Rebekah J. Patterson, on behalf of Mr. Blevins and his children, sued the Insured for negligence in state court ("state tort action"). (*Id.* ¶¶ 61-62.) Although Western Heritage initially provided counsel for the Insured's defense, Western Heritage and the Insured disagreed over the coverage amount. (*Id.* ¶ 69.)

Western Heritage contended that coverage was limited to $25,000 under the policy's assault or battery endorsement; the Insured contended that the $25,000 limitation did not apply. (*Id.* ¶¶ 65, 69.) The Insured obtained independent counsel and, on April 21, 2013, settled the state tort action with Defendants. (*Id.* ¶¶ 76-79.) As part of that settlement, the Insured agreed to the entry of final judgment against it. (*Id.* ¶ 80; Dkt. 19 at 2.) Final judgment was entered in the state tort action, and Defendants became assignees of the Insured's claims.[1] (*Id.* ¶¶ 80-81.)

On April 24, 2013, Western Heritage filed a two-count declaratory action against Defendants, as the Insured's assignees, in this Court. (Dkt. 1.) Count I seeks a declaration that the Insured forfeited its right to coverage under the policy by settling the state tort action and agreeing to entry of judgment without Western Heritage's consent. Count II seeks a declaration that $25,000 is the maximum coverage available under the Insured's CGL policy.

Defendants filed an answer, seven affirmative defenses, and two counterclaims. (Dkt. 11.) Count I of Defendants' counterclaim seeks a declaration that coverage is not limited to $25,000. Count II of Defendants' counterclaim alleges that Western Heritage is prohibited from raising a coverage defense to deny coverage because it violated the Claims Administration Statute, Florida Statute § 627.426 (the "CAS").

Contending that the CAS does not apply here, Western Heritage moves to dismiss count II of Defendants' counterclaim. Western Heritage also contends six affirmative defenses are premised on the CAS or do not provide fair notice, and should therefore be stricken.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to view the complaint in the light most

---

[1] Final judgment in the state tort action was entered on May 21, 2013.

2

favorable to the plaintiff. *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation omitted).

As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." *Id.* (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

### B. Motion to Strike

Rule 12(f) provides that the Court may order that "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" be stricken from a pleading. "An affirmative defense will only be stricken . . . if the defense is 'insufficient as a matter of law.'" *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) (quotation omitted). An affirmative "defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Id.* "A motion to strike will 'usually be denied unless the allegations have no possible relation to the

controversy and may cause prejudice to one of the parties.'" *Scelta v. Delicatessen Support Services, Inc.*, 57 F. Supp. 2d 1327, 1347 (M.D. Fla. 1999) (quotation omitted). "To the extent that a defense puts into issue relevant and substantial legal and factual questions, it is 'sufficient' and may survive a motion to strike, particularly when there is no showing of prejudice to the movant." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995) (citation omitted). However, affirmative defenses must comply with the liberal pleading requirements of Rule 8(a). *See Hansen v. ABC Liquors, Inc.,* 2009 WL 3790447, at *1 (M.D. Fla. Nov. 9, 2009). This requires a defendant provide enough facts to give "fair notice" of the defense; it does not require detailed factual allegations. *Id*. at *1.

### III. MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM (COUNT II): VIOLATION OF CLAIMS ADMINISTRATION STATUTE § 627.426

In count II of their counterclaims, Defendants allege Western Heritage violated the CAS, which prohibits an insurer from denying coverage based on a particular coverage defense unless the insurer complies with certain requirements. *See* Fla. Stat. § 627.426. Western Heritage argues that count II fails because Western Heritage is a surplus lines insurer (and the Insured's policy is a surplus lines policy) and, under recently added law, *see* Fla. Stat. § 626.913(4) (2009), the CAS does not apply to surplus lines insurance.

Defendants do not dispute that Western Heritage is a surplus lines insurer or that the Insured has a surplus lines policy. Nor do Defendants dispute that § 626.913(4) establishes that surplus lines insurers, like Western Heritage, are exempt from the CAS requirements. Rather, Defendants argue that § 626.913(4) does not apply because it does not reach lawsuits filed on or before May 15, 2009.

On June 11, 2009, the Florida Legislature amended § 626.913 to bar chapter 627 (which includes the CAS) from applying to surplus lines insurance:

4

> Except as may be specifically stated to apply to surplus lines insurers, the provisions of chapter 627 do not apply to surplus lines insurance authorized under ss. 626.918-626.937, the Surplus Lines law.

Fla. Stat. § 626.913(4) (2009); *see* 2009 Fla. Laws Ch. 2009-166, § 1. This law was amended in response to the Florida Supreme Court's decision in *Essex Insurance Company, v. Zota,* 985 So. 2d 1036 (Fla. 2008), which held that part of chapter 627 applied to surplus-lines insurance. *See* H.R. Staff Analysis 2009-166, H.B. 853 (Fla. 2009). The legislature determined that § 626.913(4) would apply retroactively, with an exception:

> The amendments to s. 626.913, Florida Statutes, in this act are remedial in nature and operate retroactively to the regulation of surplus lines insurers from October 1, 1988, except with respect to lawsuits that are filed on or before May 15, 2009.

Fla. Stat. § 626.913 n.1 (2009) (quoting 2009 Fla. Laws Ch. 2009-166, § 7) (emphasis added)). Thus, § 626.913(4) does not reach lawsuits filed on or before May 15, 2009. For lawsuits filed after May 15, 2009, § 626.913(4) bars the CAS from applying to surplus lines insurance. *Id.*; *see also Lemy v. Direct Gen. Fin. Co.*, 885 F. Supp. 2d 1265, 1271 (M.D. Fla. 2012) (section 626.913 "applies to each action begun after May 15, 2009").

Here, the issue is which lawsuit filing date determines whether the new law retroactively applies. Western Heritage argues that the date this lawsuit was filed, April 2013, governs and therefore § 626.913(4) applies; Defendants argue that the date the state tort action was filed, October 2008, governs.

As support for their argument, Western Heritage cites *Shopping Center Management v. Arch Specialty Insurance Company*, 2010 WL 1302967 (S.D. Fla. Mar. 31, 2010). In that case, a personal injury action was filed against the insured. *Id.* at *1. The insured and its surplus lines insurer disagreed over the coverage amount but agreed to litigate their respective rights under the surplus lines policy in another declaratory judgment action. *Id.* In April 2009, the insured filed a

5

separate action seeking a declaration that the insurer waived its coverage defense by failing to comply with the CAS. To determine whether § 626.913(4) retroactively applied, the court in *Arch Specialty* looked to the filing date of the declaratory judgment action. *Id*. at *4 ("[B]ecause this lawsuit was filed in April 2009, the new law's retroactive application does not reach this case.").

Defendants contend *Arch Specialty* is inapposite because both the personal injury action and the declaratory judgment action in that case were filed before May 15, 2009. Defendants imply that *Arch Specialty* did not care which lawsuit's filing date was selected because it made no difference to the issue of whether § 626.913(4) applied. However, this Court is not persuaded that the *Arch Specialty* court's decision to discuss the filing date of the lawsuit before it, not the prior separately-filed lawsuit, was due to its indifference rather than its application of the law.

Nor is the Court persuaded by Defendants' argument that "where the filing of the [state tort action] is the event that triggers the duty to comply with the CAS, the filing of the [state tort action] must be the event that determines whether the amendment to section 626.913(4) applies." (Dkt. 19 at 5.) Instead of excluding lawsuits filed on or before May 15, 2009, the Florida Legislature could have excluded lawsuits (filed anytime) that were related to underlying tort lawsuits filed on or before May 15, 2009, or otherwise chosen language showing the legislature's intent to exclude lawsuits triggering the insurer's CAS duties. The legislature did not. Further, the CAS is merely one section of chapter 627; chapter 627 includes other sections that are unrelated to the duties imposed by the CAS. *See, e.g.,* Fla. Stat. § 627.4132 (anti-stacking statute). Thus, lawsuits regarding chapter 627 do not necessarily involve an underlying lawsuit giving rise to CAS duties. *See, e.g., Teachers Ins. Co. v. Bollman*, 617 So. 2d 817, 819 (Fla. 2d DCA 1993) (declaratory judgment action regarding whether insurance contract provided for non-

6

stacked uninsured motorist coverage). Since the legislature's exclusion as to "lawsuits that are filed on or before May 15, 2009" is not limited to lawsuits involving the application of CAS duties, but relates to the application of all of chapter 627 to surplus lines insurers, the Court rejects Defendants' argument. Defendants provide no authority for their argument that the legislature intended to bar § 626.913(4) from reaching this April 2013 declaratory judgment action based on its relation to an earlier, separately-filed, closed tort action.

Defendants also contend "it makes no sense that the insurer would get to unilaterally determine the applicability of the CAS by choosing to file its Declaratory Judgment action when it did." (Dkt. 11 at 5.) This argument is not persuasive because insureds (as opposed to the insurers) can and do initiate declaratory judgment actions regarding coverage. *See, e.g., Lemy v. Direct General Fin. Co.*, 885 F. Supp. 2d 1265, 1271 (M.D. Fla. 2012) (an action began in 2008 but there were no claims against the surplus line insurer until June of 2009); *Arch Specialty*, 2010 WL 1302967, at *2; *Sharp General Contractors, Inc. v. Mt. Hawley Ins. Co.*, 604 F. Supp. 2d 1360 (S.D. Fla. 2009). Instead, the Court finds that it makes little sense to look to the state tort action—which was filed separately and where Western Heritage was not a party, Western Heritage's coverage defense was not litigated, and final judgment has been entered—to determine whether Western Heritage's alleged coverage defense in this action is subject to the CAS.

Absent any authority showing the Florida Legislature intended otherwise, the Court finds the filing date of this declaratory judgment action, April 24, 2013, governs whether § 626.913(4) applies here. Accordingly, count II of Defendants' counterclaim fails and will be dismissed.[2]

---

[2] Western Heritage's motion to dismiss also argues that, even if the CAS were to apply, Western Heritage's reason for denying coverage is not a "coverage defense" that triggers compliance with CAS. The Court need not address this argument given that it has determined that § 626.913(4) applies to bar the CAS from applying here.

## IV. MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

In its motion to strike, Western Heritage asserts that the following defense is based on the CAS and should therefore be stricken as legally invalid:

> 49. Western Heritage failed to comply with § 627.426, Florida Statutes, the Claims Administration Statue, and therefore is prohibited from denying coverage based upon the coverage defenses it raised.

(Dkt. 11 ¶ 49.) Defendants admit that this affirmative defense is based on the CAS. This affirmative defense therefore fails for the reasons stated above. Accordingly, Western Heritage's motion to strike the affirmative defense set forth in paragraph 49 is granted.

Next, Western Heritage contends that the defenses set forth in paragraphs 47, 48, 50, 51, and 52 are also based on the CAS and should be stricken. Defendants assert that those defenses have nothing to do with the CAS. Alternatively, Western Heritage argues that those defenses fail to give Western Heritage fair notice of their nature or grounds. Defendants contend that they are adequately pled.

### A. Paragraph 47 of Defendants' Answer and Affirmative Defenses

Defendants contend that the following affirmative defense alleges that Western Heritage breached the terms of the insurance agreement:

> 47. The Insured complied with the terms of the insurance contract to which it is obligated to perform. Western Heritage did not comply with the terms of the contract and/or its common law and statutory obligations.

(Dkt. 11 ¶ 47.) Although this defense does allege noncompliance with the contract, the latter portion also alleges noncompliance with "its common law and statutory obligations." This is too vague to give Western Heritage fair notice of the nature and grounds of the defense because it fails to identify what common law obligation or statutory obligation with which Western Heritage allegedly failed to comply. Given that Defendants represent that this defense only

alleges breach of the insurance agreement, the latter portion—"and/or its common law and statutory obligations"—is stricken.

Accordingly, Western Heritage's motion to strike the affirmative defense set forth in paragraph 47 is granted to the extent that "and/or its common law and statutory obligations" is stricken. However, Defendants will be given leave to re-plead an affirmative defense specifying the common law or statutory obligations with which Western Heritage failed to comply.

### B. Paragraph 48 of Defendants' Answer and Affirmative Defenses

Defendants also contend that the following affirmative defense alleges that Western Heritage breached the terms of the insurance contract:

> 48. Western Heritage breached, and thereby voided, the insurance Endorsement to the contract by violating policy provisions, common law and/or statutory obligations, which include but may not be limited to: negligently failing to properly provide independent and/or mutually agreeable counsel; negligently failing to indemnify; negligently failing to negotiate and/or settle; and breaching the implied warranty of good faith and fair dealing by an insurance company toward its insured.

(Dkt. 11 ¶ 48.) Upon review, the Court finds this is sufficient to put Western Heritage on notice as to the nature and grounds of the defense. Accordingly, Western Heritage's motion to strike the affirmative defense set forth in paragraph 48 is denied.

### C. Paragraph 50 of Defendants' Answer and Affirmative Defenses

Defendants contend that the following affirmative defense alleges waiver under *Aguero v. First American Insurance Company*, 927 So. 2d 894 (Fla. 3d DCA 2005):

> 50. Western Heritage waived its right to obtain settlement consent from the Insured because its conduct permitted the Insured to exercise its right to reject an unlawful and improper defense. *Aguero v. First American Ins. Co.*, 927 So. 2d 894 (Fla. 3d DCA 2005).

(Dkt. 11 ¶ 50.) Upon review, the Court finds that paragraph 50 gives Western Heritage fair notice of the nature and grounds of the affirmative defense. Accordingly, Western Heritage's motion to strike the affirmative defense set forth in paragraph 50 is denied.

### D. Paragraph 51 of Defendants' Answer and Affirmative Defenses

Defendants contend that this affirmative defense alleges waiver based on Western Heritage's actions:

> 51. The Blevins family further asserts the defenses of waiver, unclean hands, estoppel and unconscionability of the contract, and/or performance of its contractual, common law and statutory obligations.

(Dkt. 11 ¶ 51.) Although Defendants admit that they are not specific as to the nature of the waiver defense, Defendants assert that they do not have to be. Further, although Defendants represent that this defense alleges Western Heritage's waiver, the remainder of paragraph 51 alleges unclean hands, estoppel, unconscionability of the contract, as well as performance of unidentified contractual, common law, and statutory obligations. Because paragraph 51 does not appear to just allege waiver, and it does not give Western Heritage fair notice, it is stricken.

Accordingly, Western Heritage's motion to strike the affirmative defense set forth in paragraph 51 is granted. However, Defendants will be given leave to amend their defenses to specify the nature and grounds of the defenses.

### E. Paragraph 52 of Defendants' Answer and Affirmative Defenses

In paragraph 52 of their answer and affirmative defenses, Defendants allege:

> 52. The Blevins family asserts that Western Heritage waived its right to object to the Underlying Lawsuit's Settlement Agreement, Assignment and Final Judgment.

(Dkt. 11 ¶ 52.) Upon review, the Court finds that paragraph 52 gives Western Heritage fair notice of the nature and grounds of the affirmative defense. Accordingly, Western Heritage's motion to strike the affirmative defense set forth in paragraph 52 is denied.

## V. CONCLUSION

Accordingly it is **ORDERED AND ADJUDGED** that Plaintiff Western Heritage Insurance Company's Motion to Dismiss Count II of Defendant's Counterclaim and to Strike Related Affirmative Defenses (Dkt. 17) is **GRANTED IN PART AND DENIED IN PART** as follows:

A. Plaintiff's motion to dismiss Count II of Defendants' Counterclaim is GRANTED. Count II of Defendant's Counterclaim is dismissed.

B. Plaintiff's motion to strike Defendants' affirmative defense set forth in paragraph 47 of Defendants' Answer and Affirmative Defenses (Dkt. 11) is GRANTED to the extent that "and/or common law and statutory obligations" is stricken. However, the Court will allow Defendant leave to amend this defense in order to correct the deficiencies described in this Order.

C. Plaintiff's motion to strike Defendants' affirmative defense set forth in paragraph 48 of Defendants' Answer and Affirmative Defenses (Dkt. 11) is DENIED.

D. Plaintiff's motion to strike Defendants' affirmative defense set forth in paragraph 49 of Defendants' Answer and Affirmative Defenses (Dkt. 11) is GRANTED. Defendants' affirmative defense set forth in paragraph 49 is stricken.

E. Plaintiff's motion to strike Defendants' affirmative defense set forth in paragraph 50 of Defendants' Answer and Affirmative Defenses (Dkt. 11) is DENIED.

F. Plaintiff's motion to strike Defendants' affirmative defense set forth in paragraph 51 of Defendants' Answer and Affirmative Defenses (Dkt. 11) is GRANTED. Defendants' affirmative defense set forth in paragraph 51 is stricken. However, the Court will allow Defendant leave to amend this defense in order to correct the deficiencies described in this Order.

G. Plaintiff's motion to strike Defendants' affirmative defense set forth in paragraph 52 of Defendants' Answer and Affirmative Defenses (Dkt. 11) is DENIED.

H. Defendants are directed to file their amended answer and affirmative defenses by **November 7, 2013.**

**DONE AND ORDERED** at Tampa, Florida, this 24th day of October, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record and Parties