**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WESTERN HERITAGE INSURANCE
COMPANY,

        Plaintiff / Counter-Defendant,

                              Case No. 8:13-cv-1116-T-24-TGW

v.

DENNIS MARK MONTANA, as Guardian
of Paul N. Blevins, as Assignee of Suncoast
Preferred Investment Corp., *et al.,*

        Defendants / Counter-Plaintiffs.

_____/

## <u>ORDER</u>

This cause comes before the Court on Plaintiff Western Heritage Insurance Company's ("Western Heritage") Motion for Summary Judgment. (Dkt. 48.) Defendants Dennis M. Montana, as guardian of Paul N. Blevins, and Rebekah J. Patterson, as guardian of minor children, D.B., D.B., and F.B., as assignees of Suncoast Preferred Investment Corp., filed a response in opposition (Dkt. 51), and Western Heritage filed a reply (Dkt. 60).

Also before this Court is Defendants' Motion for Summary Judgment (Dkt. 49), which Western Heritage opposes (Dkt. 53.)

## I.      BACKGROUND

In October 2007, Paul Blevins was assaulted in the parking lot of a bar owned by Suncoast Preferred Investment Corporation ("Suncoast"), and suffered a fractured neck and severe brain injury. (Dkt. 48-3.)  Blevins was deemed incapacitated, and legal guardians were appointed for Blevins and his three minor children (together, "the Blevinses").  (*Id*.)

A. **The Policy**

Suncoast maintained a commercial insurance policy with Western Heritage.  (Dkt. 1-1,

Dkt. 48-1.)  The policy's commercial general liability ("CGL") coverage, under which the limits

of insurance are $1,000,000 per occurrence, provided in part:

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" . . . to which this insurance applies. We will
> have the right and duty to defend the insured against any "suit" seeking those
> damages. However, we will have no duty to defend the insured against any "suit"
> seeking damages for "bodily injury" . . . to which this insurance does not apply. We
> may, at our discretion, investigate any "occurrence" and settle any claim or "suit"
> that may result.

(Dkt. 1-1 at 16, CGL Policy § I.1.a, III.1; Dkt. 1-1 at 9, Policy Declarations).  Suncoast's "Duties

in the Event of Occurrence, Offense, Claim or Suit" under this CGL policy included "cooperat[ing]

with [Western Heritage] in the investigation or settlement of the claim or defense."  (Dkt. 1-1 at

25, CGL Policy § IV.2.c.)  Further, "[n]o insured will, except at that insured's own cost, voluntarily

make a payment, assume an obligation, or incur any expense, other than for first aid, without

[Western Heritage's] consent."  (*Id*. § IV.2.d.)

The CGL policy was modified by an endorsement, titled "Limited Coverage—Assault or

Battery Endorsement," which provided limited coverage for bodily injury and medical expenses

resulting from assault or battery or physical altercations that occur on the insured's premises.  (Dkt.

1-1 at 52, Limited Coverage Endorsement.)  Under this limited coverage endorsement, the limits

of insurance were $25,000 per occurrence.  (*Id*. §§ 1-2.)

B. **The Underlying Action**

The Blevinses retained Wesley Straw, Esq. as their counsel.  In June 2008, Straw sent a

letter to Western Heritage, offering to settle the Blevinses' claim against Suncoast for $1,000,000.

(Dkt. 48-3.)  Western Heritage responded by sending Straw a letter in July 2008, offering to settle

for $25,000 and asserting that the policy's limited coverage endorsement applied to the Blevinses'

claim. (Dkt. 48-4.) On the same day, Western Heritage also sent Suncoast a letter, stating that: the Blevinses had made a $1,000,000 settlement demand; Suncoast's coverage limits were reduced to $25,000 pursuant to the limited coverage endorsement; Western Heritage was attempting to settle the claim within those limits; and Suncoast may be personally liable for any amount in excess of those limits and may wish to retain independent counsel for any personal exposure. (Dkt. 48-5.)

In November 2008, the Blevinses filed suit against Suncoast in state court ("underlying action"), alleging that Suncoast was negligent in operating its business and that, "after being placed on notice of potential harm and a potentially worsening injury to [Blevins], [Suncoast] . . . negligently failed to respond." (Dkt. 48-6 at ¶ 8.)

Western Heritage hired the law firm, Butler, Pappas, Weihmuller, Katz, Craig, LLP, to defend Suncoast in the underlying action. (Dkt. 48-7.) Specifically, in a November 11, 2008 letter to Butler Pappas, Western Heritage stated:

> Please perform a conflicts check and proceed to answer and defend Suncoast Preferred in the captioned matter. This is a loss where plaintiff was involved in a fight in the parking lot outside of our insured's business. Our policy has reduced limits of $25,000 per occurrence for cases involving assault or battery. We have tendered those limits to plaintiff's counsel.

(Dkt. 48-7.) Charles Reynolds, Esq., of Butler Pappas began representing Suncoast. (Dkt. 48-13, Richards Depo. Tr. 117:16-118:5.) During his representation of Suncoast, Reynolds discussed issues regarding the underlying action with Suncoast's president, Michael Richards (*id*. at 30:3-31:6, 82:22-84:7), including issues regarding settlement offers (*id*. at 95:18-96:109:6-110:25).

At some point, Western Heritage retained the law firm, Phelps Dunbar, LLP, as Western Heritage's coverage counsel in the underlying action. (Dkt. 48-10, Korzep Depo. Tr. 67: 9-13.) On March 24, 2010, Phelps Dunbar sent Suncoast a letter on Western Heritage's behalf, stating that the Blevinses had rejected its offer to settle for $25,000 pursuant to the policy's limited coverage endorsement, and that Straw on the Blevinses' behalf had sent Suncoast a letter proposing

3

to settle the underlying action. (Dkt. 48-11; Dkt. 26-6.) Western Heritage further stated that it "is currently defending Suncoast . . . subject to a reservation of rights," and "would like to remind Suncoast of its duties under the Policy." (*Id*.) Specifically:

> If Suncoast accepts Straw's proposal, it would likely be in violation of the conditions section of the Policy. . . . Given that Western Heritage is currently defending Suncoast, . . . Suncoast cannot enter into a settlement without Western Heritage's consent and doing so could affect coverage for this claim.
>
> Western Heritage continues to reserve the right to assert all policy defenses. Any actions that have or will be taken in connection with this claim should not be construed as a waiver of any rights of Western Heritage to invoke the terms, conditions and exclusions of the Policy, all of which actions taken on behalf of Western Heritage are done entirely without prejudice.

(*Id*.)

Phelps Dunbar on behalf of Western Heritage sent two more letters, dated October 26, 2011 and April 24, 2012, to Suncoast. (Dkt. 53-12; Dkt. 49-5.) In both letters, Western Heritage stated that: (1) it believed $25,000 was the maximum coverage available under the policy's limited coverage endorsement; (2) Straw had rejected its $25,000 settlement offer; (3) it was defending Suncoast "subject to a reservation of rights;" and (4) it continued to "reserve the right to assert all policy defenses . . . [and] to invoke the terms, conditions and exclusions" of the policy. (*Ibid*.) Further, the April 24, 2012 letter stated that in the event of a liability trial and judgment against Suncoast, if "Suncoast is unable to apportion damages covered under the limited coverage endorsement and damages that may be covered under the general liability limits, Suncoast may be unable to recover under the general liability limits." (Dkt. 49-5.)

In November 2012, Reynolds on behalf of Suncoast sent Western Heritage a letter, summarizing the events of a hearing in which the state court denied Suncoast's summary judgment motion. (Dkt. 49-6.) Further, Reynolds stated that Suncoast "wishes to avoid a trial of this matter if possible." (*Id*.)

In late 2012 or early 2013, the Blevinses made a settlement offer to Suncoast.  Reynolds told Richards that he could not represent or advise Suncoast as to the offer and advised Suncoast to get other counsel.  (Dkt. 48-13, Richards Depo. Tr. 17:18-18:1, 36:3-44:15, 118:15-119:7, 124:12-19.)  As a result, Suncoast retained Anthony Comparetto, Esq.  (*Id.*)  However, Richards did not believe Reynolds was asking Suncoast to terminate him.  (*Id.* at 40:13-21.)

Comparetto and Straw subsequently scheduled a mediation between Suncoast and the Blevinses.  (Dkt. 48-15, Comparetto Depo. Tr. 15:6-8, 24:2-15; Dkt. 48-16, Straw Depo. Tr. 13:3-14:12.)  In an April 15, 2013 letter to Phelps Dunbar, Straw stated that the parties were attending a mediation on April 18, 2013, and that Phelps Dunbar was "welcome to attend on behalf of the insurance company and fully participate in the conference."  (Dkt. 48-17.)

In an April 16, 2013 email to Reynolds, Comparetto attached a letter (signed by Richards) stating that Reynolds' representation was terminated.  (Dkt. 48-19; Dkt. 48-20.)  After this termination letter, Reynolds had no further communication with Richards. (Dkt. 48-8, Reynolds Depo. Tr. 53:2-4, 62:17-18; Dkt. 48-13, Richards Depo. Tr. 119:8-25.)

At the April 18, 2013 mediation, Comparetto represented Suncoast; Reynolds had not been invited and did not attend.  (Dkt. 48-8, Reynolds Depo. Tr. 63:2-7; Dkt. 48-13, Richards Depo. Tr. 56:18-57:3; Dkt. 48-16, Straw Depo. Tr. 49:1-22).  Phelps Dunbar, representing Western Heritage, also attended the mediation but stated that Western Heritage did not consent to Suncoast's settling the matter and reserved the right to deny coverage should it do so.  (Dkt. 48-23.)

The Blevinses and Suncoast settled the litigation and executed a settlement agreement, dated April 18, 2013, agreeing to the entry of a final judgment in the amount of $6,768,528 against

Suncoast.  The Blevinses agreed that they would not execute on the judgment, and Suncoast agreed to assign its claims against Western Heritage to the Blevinses.[1]  (Dkt. 48-24.)

### C.      **Procedural Background**

On April 24, 2013, Western Heritage filed the instant declaratory judgment action against Defendants, as Suncoast's assignees, in this Court.  (Dkt. 1.)  In count I of its complaint, Western Heritage seeks a declaration that there is no coverage under the policy.  Count I alleges that Suncoast breached the policy's cooperation requirements by rejecting Western Heritage's defense and settling the underlying action without Western Heritage's consent.  (*Id.*)  Alternatively, to the extent coverage does exist under the policy, count II seeks a declaration that coverage for the injuries alleged in the underlying action is limited to $25,000 pursuant to the policy's limited coverage endorsement.  (*Id.*)

Defendants filed a counterclaim, seeking a declaration that coverage for the injuries alleged in the underlying action is not limited to $25,000.[2]  (Dkt. 11.)  Under Defendants' interpretation of the policy, the full $1,000,000 CGL policy limits are available for the underlying action.  (*Id.*)

Western Heritage and Defendants have filed cross-motions for summary judgment on all claims.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  *See Porter v. Ray*, 461 F.3d

---

[1] On May 21, 2013, the state court entered final judgment and an order approving the settlement.
[2] Defendants also filed a second counterclaim, alleging that Western Heritage was prohibited from asserting a coverage defense because it violated Florida Statutes § 627.426; however, the Court granted Western Heritage's motion to dismiss this counterclaim.  (Dkt. 22.)

1315, 1320 (11th Cir. 2006).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *See id.*  When a moving party has discharged its burden, the non-moving party must go beyond the pleadings and, by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.

## III.   DISCUSSION

### A.   <u>Count I: Breach of Policy by Failing to Cooperate</u>

In count I of its complaint, Western Heritage seeks a declaration from the Court that Suncoast forfeited its coverage under the CGL policy by settling the underlying action without Western Heritage's consent.  Both parties have moved summary judgment on this claim.  The parties dispute whether Western Heritage provided Suncoast a conditional defense (*i.e.,* a defense subject to a reservation of rights) or an unconditional defense, and whether Suncoast breached the CGL policy by rejecting that defense and subsequently settling the underlying action without Western Heritage's consent.

#### 1.   *Legal Framework*

Western Heritage has a contractual duty to defend and "is obligated to defend a claim even if it is uncertain whether coverage exists under the policy." *First American v. Nat'l Union Fire Ins*., 695 So. 2d 475, 476 (Fla. 3d DCA 1997). "Under these circumstances, an insurer may reserve its right to challenge coverage under the policy . . . by providing a defense under a reservation of rights." *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1149 (11th Cir. 2010). "Such a conditional defense 'resolves the urgent question of who shall defend and postpones resolution of the contingent question of who shall pay any judgment.'" *Id*. (quoting *Taylor v. Safeco Ins. Co*., 361 So. 2d 743, 745 (Fla. 1st DCA 1978)).

In fulfilling its duty to defend, ""the insurer employs counsel for the insured . . . and controls the insured's defense after a suit is filed on a claim," which includes "mak[ing] decisions as to when and when not to offer or accept settlement of the claim." *Doe on Behalf of Doe v. Allstate Ins. Co.*, 653 So.2d 371, 373 (Fla.1995). The insurer's "right to control the defense is a valuable one in that it reserves to the insurer the right to protect itself against unwarranted liability claims and is essential in protecting its financial interest in the outcome of litigation." *Travelers Indem. Co. of Ill. v. Royal Oak Enter., Inc*., 344 F.Supp.2d 1358, 1374 (M.D. Fla. 2004) (internal quotation marks omitted).  An insured, in turn, "has the reciprocal obligation to allow the insurer to control the defense and to cooperate with the insurer."  *Doe*, 653 So.2d at 373.  An insured's failure to cooperate may be a breach of the policy, releasing the insurer's obligations under the policy.  *Nat'l Union*, 695 So. 2d at 477.

But if an insurer wrongfully refuses to defend, the insurer breaches its duty to defend and forfeits its right to control the defense.  This "relieves the insured of his contract obligation to leave the management of such suit to the insurer and justifies him in assuming the defense of the action on his own account." *BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc*., 930 So. 2d 668, 673 (Fla. 3d DCA 2006).  The insured would thereafter be free to settle without the insurer's consent.  *Nat'l Union*, 695 So. 2d at 477.

An insurer, however, does not breach its duty to defend by providing a defense under a reservation of rights.  *Id.*  Yet, "[w]hile an insurer must defend its insured, and may tender its defense subject to a reservation of rights, Florida law does not require an insured to accept such a defense."  *Continental Cas. Co. v. City of Jacksonville*, 283 F. App'x 686, 690 (11th Cir. 2008).  As explained in *Taylor*:

> Just as the insurer is not required to abandon its contest of a duty to pay as a
> condition of fulfilling an assumed or admitted duty to defend, the insured is not

> required to abandon control of his own defense as the price of preserving his claim, disputed by the insurer, that the insurer pay any judgment. The law respects, but does not require, such agreements.

361 So. 2d at 745 (finding that the insured is "not obliged to surrender control of his personal defense to an insurer which disclaimed responsibility for any judgment within policy limits that might result from the litigation").

Thus, "if the insurer offers to defend under a reservation of rights, the insured has the right to reject the defense and hire its own attorneys and control the defense." *Church*, 930 So. 2d at 671. An insured's subsequent settlement without the insurer's consent would not release the insurer's obligation to pay under the policy:

> Given [the insurer's] legitimate reservation of its denial of ultimate liability, the law does not and did not compel [the insured] to accept, nor to restore, such a relationship. [The insured] was therefore free to provide his own defense without affecting any liability [the insurer] might ultimately have for the judgment. [The insured] was entitled also to effect a settlement of the [underlying] claim against him, and that notwithstanding [the insurer's] policy which forbad [sic] the insured to "assume any obligation" without [the insurer's] consent and which conditioned [the insurer's] liability on "a judgment against the insured after actual trial or by written agreement of the insured, claimant and [the insurer]." [The insurer's] reservation of its assertion of nonliability, though privileged, relinquished to [the insured], at his election, control of the litigation.

*Taylor*, 361 So. 2d at 746.

However, the insured must actually reject the conditional defense to be entitled to take control of the defense. *Aguero v. First Am. Ins. Co.*, 927 So. 2d 894, 898 (Fla. 3d DCA 2005). If the insured accepts and does not reject the conditional defense, the insured is required to cooperate with the insurer. *Am. Pride*, 601 F.3d at 1149.[3]

---

[3] An insured's failure to cooperate would constitute a breach of the policy releasing the insurer from its obligations under the policy, if: "(1) the lack of cooperation was material, (2) the insurer 'exercised diligence and good faith in bringing about the cooperation of its insured' and itself 'complied in good faith with the terms of the policy,' and (3) the lack of cooperation substantially prejudiced the insurer." *Mid-Continent Cas. Co. v. Basdeo*, 477 F. App'x 702, 707 (11th Cir. 2012) (quoting *Ramos v. Nw. Mut. Ins. Co.,* 336 So. 2d 71, 75 (Fla. 1976)).

### 2. *Whether Western Heritage was providing Suncoast a conditional defense at the time Suncoast rejected Western Heritage's defense*

Western Heritage argues that it continuously provided Suncoast an unconditional—not conditional—defense.  Defendants argue that Western Heritage was providing a conditional defense at the time Suncoast rejected that defense by terminating Reynolds in April 2013.

The parties do not dispute that, while providing Suncoast a defense, Western Heritage issued three letters to Suncoast (dated March 2010, October 2011, and May 2012), each stating:

- Suncoast's coverage is limited to $25,000 under the limited coverage endorsement.

- "Western Heritage is currently defending Suncoast . . . subject to a reservation of rights."

- Western Heritage "continues to reserve the right to assert all policy defenses.  Any actions that have or will be taken in connection with this claim should be not be construed as a waiver of any rights of Western Heritage to invoke the terms, conditions and exclusions of the Policy, all of which actions taken on behalf of Western Heritage are done entirely without prejudice."

However, the parties dispute whether these letters establish that Western Heritage was providing a conditional defense at the time Suncoast terminated Reynolds and settled with the Blevinses.  Emphasizing the "reservation of rights" language, Suncoast argues that the letters establish Western Heritage was providing a conditional defense.  Despite the "reservation of rights" language, Western Heritage argues that it continuously provided an unconditional defense.

The Court disagrees with Western Heritage.  In the letters to Suncoast, Western Heritage expressly reserved its right to assert all defenses, conditions, and exclusions of the policy.  And its April 2012 letter also described a scenario under which Suncoast might be unable to recover under the policy's general liability limits.  No evidence shows that Western Heritage later rescinded its reservation of rights or offered to defend without reservation.  Thus, at the time Suncoast rejected Western Heritage's defense in April 2013, Western Heritage was providing Suncoast a conditional defense.

### 3.   *Whether Western Heritage is excused from its obligations under the policy due to Suncoast's failure to cooperate*

The parties next dispute whether Western Heritage is released from its obligations under the CGL policy because Suncoast rejected the conditional defense and settled the underlying action without Western Heritage's consent.  Western Heritage argues that Suncoast could not accept the defense for over four years and then settle without Western Heritage's consent.  Specifically, Western Heritage contends that, under Florida law, an insured who has accepted a conditional defense cannot reject that defense to take control of the case—unless the insurer materially changes the terms of the conditional defense.  Western Heritage asserts that Suncoast accepted Reynolds' representation, the terms of which never changed because Western Heritage's position was always that $25,000 was the most it would pay under the CGL policy.

Defendants argue that Suncoast terminated Reynolds after Western Heritage changed the terms of the conditional defense—when Reynolds advised Suncoast to obtain other counsel and indicated he could not advise Suncoast regarding the Blevinses' settlement offer—and was therefore free to settle without Western Heritage's consent.  In response, Western Heritage does not dispute that Reynolds' described conduct occurred; instead, it argues that such conduct does not constitute a material change in the terms of the defense.

The parties do not dispute that an insured may reject, after accepting, a conditional defense if the insurer changes the terms in a material way.[4]  *See Mid-Continent Casualty Co. v. American Pride Building Co., LLC*, 601 F.3d 1143, 1150 (11th Cir. 2010).  Nor do they dispute that Reynolds told Suncoast that he could not advise it regarding the offer and advised Suncoast to obtain other counsel.  They dispute whether this conduct was a material change in the terms of the defense.

---

[4] To the extent Defendants contend Suncoast never accepted Western Heritage's defense, the Court disagrees.  It is undisputed that Reynolds represented Suncoast, Western Heritage paid for that representation, and Suncoast allowed Reynolds to defend it from November 2008 to April 2013.

In *American Pride*, the insured was sued for copyright infringement.  601 F.3d at 1145.
The insurer, who had issued a general liability insurance policy providing coverage up to $1
million, sent the insured multiple reservation of rights letters offering to defend the insured
pursuant to a full reservation of rights.  *Id*. at 1145-46.  None of these letters informed the insured
that: (1) it could not reject the conditional defense after accepting that defense; or (2) it may have
to reimburse the insurer for attorney fees or costs expended on the conditional defense.  *Id*. at 1146.

The insurer provided the insured with a conditional defense for over a year.  *Id*.  But
settlement negotiations were unsuccessful, and the insured retained independent counsel and
demanded that the insurer withdraw its reservation of rights or else the insured would reject the
conditional defense.  *Id*.  The insurer responded that the insured: (1) could not reject, after
accepting, the conditional defense under Florida law; and (2) the insured would breach the policy
by rejecting the conditional defense and settling the case without the insurer's counsel.  *Id*.

The plaintiffs in the underlying action made another settlement offer, which the insurer
rejected and stated that it did not intend to increase its $100,000 settlement offer.  *Id*.  Further, the
insurer filed a declaratory judgment action against the insured, alleging that the insurer had no
duty to defend because the underlying action was not covered under the policy, and that the insured
was liable to pay the insurer's attorney fees and costs.  *Id*. at 1147.

The next day, the insured rejected the insurer's conditional defense in the underlying
action.  *Id*.  Then, without the insurer's consent, the insured executed a settlement agreeing to the
entry of a $1.7 million consent judgment against the insured and assigning the insured's rights to
the plaintiffs of the underlying action.  *Id*.

In its declaratory judgment action, the insurer amended its complaint to allege that it had
no duty to indemnify the insured against the consent judgment because the insured breached its

duty to cooperate under the policy, and then moved for summary judgment. *Id*. Addressing the insured's rejection of the conditional defense, the district court determined that the insured "could properly reject the conditional defense and settle the case because [the insurer] materially changed the terms of the defense by seeking attorney fees and costs." *Id*. at 1148.

On appeal, the Eleventh Circuit agreed with the district court's conclusion that an insured can reject a conditional defense where the insurer "change[d] the terms of the conditional defense in a material way." *Id*. at 1151. According to the Eleventh Circuit, evidence that the insured "actually rejected [the insurer's] conditional defense the day after [the insurer] filed its declaratory judgment action informing [the insured] that it intended to seek attorney fees and costs" could establish that the insured "properly rejected [that] defense . . . based upon these changed terms and conditions," after which the insured would be free to enter a settlement agreement. *Id.* at 1150.

Although Suncoast could have rejected the conditional defense and entered a settlement agreement with the Blevinses, if it had done so timely, and if Western Heritage had terminated the defense or materially changed the terms and conditions of the defense as was done in *American Pride*, none of those things happened here. Suncoast accepted Western Heritage's defense for over four years and then rejected it two days prior to settling over Western Heritage's objections. Reynolds' advising Suncoast that it should consult with another attorney about the Blevinses' settlement offer was not a termination of Western Heritage's defense. Nor was it a material change in the defense. The first letter Western Heritage wrote to Suncoast in July 2008 advised Suncoast that the coverage for the claim was limited to $25,000, that it may have substantial personal exposure, and that it may wish to retain its own counsel to assist it in regards to that personal exposure. There was always a gap between the $25,000 Western Heritage claimed were the limits under the policy for the claim and what the settlement demands from the Blevinses were. Suncoast

always faced substantial personal exposure.  That never changed.  As a result, Suncoast was not free to settle the lawsuit over Western Heritage's objections.

However, Suncoast's failure to cooperate does not release Western Heritage from its duty to pay $25,000 under the CGL policy.  In order for Suncoast's lack of cooperation to excuse Western Heritage from its policy obligations, Western Heritage must prove that: (1) Suncoast's failure to cooperate was material, (2) Western Heritage complied in good faith with the terms of the policy and exercised diligence and good faith in bringing about Suncoast's cooperation; and (3) Suncoast's lack of cooperation substantially prejudiced Western Heritage.  *Ramos v. Nw. Mut. Ins. Co.,* 336 So. 2d 71, 75 (Fla. 1976.)

"[W]hether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, but under some circumstances, particularly where the facts are admitted, it may well be a question of law."  *Id.* at 75.  Here, Western Heritage continuously offered to settle the underlying action for $25,000, which it believed was the maximum amount it was obligated to pay under the CGL policy.  And, as discussed next, the Court agrees with Western Heritage that the limits of the CGL policy under the facts of this case are $25,000, not $1,000,000.  Western Heritage's obligation to pay—despite Suncoast's unauthorized settlement—therefore remains $25,000.

Even if Suncoast breached its duty to cooperate under the CGL policy, that breach did not substantially prejudice Western Heritage and Suncoast did not forfeit coverage under the CGL policy to the extent that coverage is limited to $25,000.

**B.      Limited Coverage—Assault or Battery Endorsement: Count II of Western Heritage's Complaint and Defendants' Counterclaim**

Both Western Heritage and Defendants have asked the Court for a determination of the amount of coverage under the CGL policy.  In its summary judgment motion, Western Heritage

14

argues that a declaratory judgment should be entered in its favor, declaring that coverage for the

injuries alleged in the underlying action is limited to $25,000. Specifically, Western Heritage

contends the alleged injuries "arise out of" an assault or battery and therefore fall within the

policy's limited coverage endorsement, which provides:

> This insurance does not apply to "bodily injury," . . . or "medical expense" arising
> out of assault or battery or out of any act or omission in connection with the
> prevention or suppression n of such acts, including failure to warn, train or
> supervise, whether caused by or at the instigation or direction of the insured, his
> employees, patron or any other person; except as provided below:
>
>> 1. "Bodily injury," . . . or "medical expense" resulting from assault or
>> battery or physical altercations that occur in, on, near or away from the
>> insured's premises:
>> . . . .
>>> c. Whether or not caused by, or arising out of any insured's act or
>>> omission in connection with the prevention or suppression of the
>>> assault, battery or physical altercation, including, but not limited to,
>>> negligent training and/or supervision.
>
>> 2. Limits of Insurance
>
>> The Limits of Insurance shown below are the only Limits of Insurance
>> available to any insured under this policy, for such insurance as is provided
>> by this endorsement. . . .
>
>>> a. $25,000 Each Occurrence

(Dkt. 48-1 at 50, Limited Coverage—Assault or Battery Endorsement.) In response, Defendants

argue that the limited coverage endorsement is inapplicable.

First, Defendants argue that Western Heritage has not and cannot establish that the copy of

the policy attached to Western Heritage's complaint is a true and correct copy, and therefore cannot

establish that the limited coverage endorsement is part of the policy. Defendants rely on the

following deposition testimony of Rick Korzep, Western Heritage's corporate representative:

> Straw: "Can you say, sir, whether or not an authorized representative of Western
> Heritage ever verified the accuracy and completeness of the Schedule of Forms
> and Endorsements produced with respect to [the policy]?"

Korzep: "I don't know if they did."

(Dkt. 48-10, Korzep Depo. Tr. 31:23-32:3.)

However, the policy includes a "Declarations" section with an attached schedule listing the applicable forms and endorsements; this schedule lists the limited coverage endorsement at issue here. (Dkt. 1-1 at 4, Policy Declarations; Dkt. 1-1 at 5, Policy Schedule of Forms and Endorsements.)   Further, Western Heritage provided an affidavit attesting that the copy of the policy attached to its complaint is a true and exact copy of the policy in effect for Suncoast during the relevant policy period.  (Dkt. 1-1 at 1.)  This representation is not refuted by the corporate representative's deposition testimony.  Nor has Suncoast submitted any evidence to the contrary.  Accordingly, there is no genuine issue of material fact as to whether the provided copy of the policy and its endorsements is a true copy.  *See Burlington Ins. Co., Inc. v. Normandy Gen. Partners*, 2014 WL 1045737, at *6 (11th Cir. Mar. 19, 2014) (finding no genuine issue of material fact as to whether the copy of the policy supplied by insurer was a true copy where the insurer provided an affidavit and defendants submitted no evidence to the contrary).

Second, Defendants argue that the limited coverage endorsement does not apply because the negligent failure to respond claim does not "arise out of" the assault and battery on Blevins. Defendants assert that Suncoast's negligence in responding to and aiding Blevins is separate and independent from the assault or battery on Blevins.  Defendants rely on *Western Heritage Insurance Co. v. Estate of Dean,* 55 F. Supp. 2d 646 (E.D. Texas 1998), which analyzed a similar assault and battery provision in the context of a claim that the insured (a bar) negligently failed to render aid to its customer following a fight on its premises.  Applying a "but for" standard under Texas law, the insurer argued that the policy's assault and battery exclusion applied because the negligent failure to render aid claim would not exist "but for" the assault and battery.  *Id.* at 650. The *Dean* court rejected this argument.  Finding that "[t]here is a real danger the 'but for' standard

16

could be taken to extremes," *Dean* concluded that the bar's failure to render aid to its customer was separate from the assault and battery on the customer.  *Id.* at 651.

However, under well-established Florida law, the term "arising out of" in insurance contracts is construed broadly; it is interpreted as something broader than causation and is more "equivalent to the terms 'having its origins in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with.'" *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539–40 (Fla. 2005); *Normandy*, 2014 WL 1045737, at *3.  Here, the alleged injury from Suncoast's negligence in responding to and aiding Blevins following his assault or battery is incident to, and has a connection with, that assault or battery.  The Court concludes the negligence claim alleges injuries arising out of an assault or battery, and the limited coverage endorsement therefore applies.

Florida courts analyzing similar negligence claims and policy language have also held that injuries from such claims arise out of assault or battery.  *See Britamco Underwriter's, Inc. v. Zuma Corp.,* 576 So. 2d 965 (Fla. 5th DCA 1991) (negligent failure to provide adequate security claim arose from assault and battery); *Burlington*, 2014 WL 1045737, at *2 ("[A]lthough some of the Appellants' claims alleged negligence, all of the claims ultimately arose in whole or in part out of the assault and battery[.]").  For example, in *Hermitage*, the plaintiff in the underlying action sued the insured, a night club, for bodily injuries suffered from an attack by unidentified persons at the nightclub.  *Hermitage Ins. Co. v. Studio, Inc. Night Club Corp.*, 2009 WL 103664, at *1 (M.D. Fla. Jan. 15, 2009).  The plaintiff's complaint included a negligence claim, alleging that the night club failed to, among other things, assist the plaintiff after he was injured.  *Id.*, at *2.  The court concluded that no coverage was available under the policy's assault and battery provision, which excluded bodily injury "arising . . . out of" an assault or battery.  *Id.*, at *3.

Third, Defendants argue that the limited coverage endorsement is ambiguous and defective. Defendants rely on Richards' testimony that he thought he had more than $25,000 in coverage due to the CGL policy's premium amount.  However, the Court finds no ambiguity in the limited coverage endorsement, and Richards' testimony does not establish that one exists.

Accordingly, the Court concludes that coverage under the Western Heritage CGL policy for injuries alleged in the underlying action is limited to $25,000.[5]  Western Heritage's motion for summary judgment as to count II of its complaint and as to Defendants' counterclaim is granted. Defendants' motion for summary judgment as to count II of Western Heritage's complaint and Defendants' counterclaim is denied.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Western Heritage's Motion for Summary Judgment (Dkt. 48) is **GRANTED IN PART AND DENIED IN PART** and that Defendants' Motion for Summary Judgment (Dkt. 49) is **GRANTED IN PART AND DENIED IN PART**, as follows:

A. As to count I of Western Heritage's complaint, seeking a declaration that Suncoast breached the policy conditions and forfeited its coverage under the policy, Western Heritage's motion is DENIED in that it seeks a declaration that no coverage exists, and

---

[5] Western Heritage also seeks attorneys' fees and costs for responding to Defendants' argument that the policy is ambiguous. (Dkts. 51, 61.) Western Heritage argues that it contravenes a prior pre-trial discovery order in which Magistrate Judge Wilson granted Western Heritage's motion for protective order and, according to Western Heritage, ruled as a matter of law that no parol evidence would be used in the interpretation of the policy.  (*Id.*) Upon consideration, the Court denies Western Heritage's request. Notably, Magistrate Judge Wilson's order merely states that <u>Western Heritage</u> (in response to Defendants' concern that Western Heritage may introduce certain evidence in support of its policy construction) represented that it did not intend to introduce extraneous or parol evidence concerning the interpretation of the policy.  (Dkt. 28.)

Defendants' motion is GRANTED to the extent that coverage exists in the amount of $25000;

B.  As to count II of Western Heritage's complaint, seeking a declaration that Suncoast's coverage under the policy is limited to $25,000, Western Heritage's motion is GRANTED, and Defendants' motion is DENIED;

C.  As to Defendants' counterclaim, seeking a declaration that Suncoast's coverage under the policy provided more than $25,000 for the underlying claims, Western Heritage's motion is GRANTED, and Defendants' motion is DENIED.

D.  The Clerk is directed to enter judgment in favor of Defendants to the extent that coverage exists in the amount of $25000 as to count I of Western Heritage's complaint, and to enter judgment in favor of Western Heritage as to count II of its complaint and as to Defendants' counterclaim.  Additionally, the Clerk is directed to terminate all pending motions and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 7th day of July 2014.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record